CORNELIUS CASSIN, Appellant, v. STILLMAN, DELEHANTY, FERRIS COMPANY, Respondent.

**Master and servant — negligence — defective ladder furnished by general contractor to subcontractor for employees of latter to use — when general contractor liable to employee of subcontractor injured by fall caused by breaking of ladder.**

Plaintiff, an employee of a roofing company which was engaged in putting an asbestos roof on sheds being erected for a railroad company by defendant as general contractor, was injured by a fall caused by the breaking of a ladder which he was using to get to his work upon the roof. It appears that it was the custom for general contractors to furnish ladders for roofers and the evidence warrants the inference that the carpenter foreman of defendant was authorized to and did direct the foreman of the roofing company to procure and use the ladder in question; that such ladder was built by defendant under the direction of its carpenter foreman; that the ladder at the time of the accident was not a proper and sufficient ladder for the purpose for which it was used, and that by reason of the circumstances the defendant failed to exercise reasonable care to keep the ladder in such condition that plaintiff would not be unnecessarily exposed to danger. *Held*, that the question presented by the record was clearly one to be submitted to the jury and that the judgment dismissing the complaint is erroneous.

*Cassin* v. *Stillman, Delehanty, Ferris Co.*, 192 App. Div. 965, reversed.

(Argued December 13, 1921; decided January 10, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 26, 1920, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*William Seward Shanahan* for appellant. The ladder which broke was supplied or furnished to, or provided for the use of, the plaintiff by the defendant. (*Quigley* v. *Thatcher*, 207 N. Y. 66; *Connors* v. *Great Northern El. Co.*, 180 N. Y. 509; *Hordern* v. *Salvation Army*, 199 N. Y.

233; *Dougherty* v. *Weeks*, 126 App. Div. 786; *Bill* v. *Expanded Metal Co.*, 60 App. Div. 470; *Winterberg* v. *Seitz*, 8 App. Div. 439; *Hannigan* v. *Union Warehouse Co.*, 3 App. Div. 618; *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Jensen* v. *Cauldwell Wingate Co.*, 225 N. Y. 729.) If the defendant assumed to provide the ladder for the plaintiff or could reasonably foresee that he would use it, there devolved upon the defendant a legal duty of care in respect of the ladder. (*Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124; *Priolo* v. *Southard Wrecking Co.*, 198 N. Y. 528; *Hannigan* v. *Union Warehouse Co.*, 3 App. Div. 618; *Hordern* v. *Salvation Army*, 199 N. Y. 233; *Bill* v. *Expanded Metal Co.*, 60 App. Div. 470; *Winterberg* v. *Seitz*, 8 App. Div. 439; *McLean* v. *Studebaker Co.*, 221 N. Y. 475–478; *Hess* v. *Bernheimer & Schwartz Brewing Co.*, 219 N. Y. 415; *McMullen* v. *City of New York*, 110 App. Div. 117.)

*Frederick W. Catlin* and *Norman G. Hewitt* for respondent. As there was no proof that by virtue of contract or general custom the duty or obligation rested upon the defendant to furnish portable ladders to the roofer's employees, no failure of duty to the plaintiff was shown, and the complaint was properly dismissed. (*Antes* v. *Watkins*, 112 App. Div. 860; *Bohnhoff* v. *Fischer*, 210 N. Y. 172; *Quigley* v. *Thatcher*, 207 N. Y. 66.)

HOGAN, J. This action was brought to recover damages alleged to have been sustained by plaintiff due to personal injuries received by him in December, 1916.

The following facts were conceded upon the trial:

(a) That defendant was at the time of the accident to plaintiff the general contractor for the building of certain sheds at pier No. 3, Weehawken, New Jersey, for the West Shore Railroad Company.

(b) That a part of the contract of defendant was the roofing of the sheds and defendant made a contract with

the Johns Manville Company to put an asbestos covering on the completed roofs that had been placed on two sheds.

(c) That defendant had in its employ at the time of the accident and prior thereto a foreman carpenter named Erricsson.

(d) That the ladder, the breaking of which caused the accident, was built by defendant under the direction of Erricsson, the foreman carpenter of defendants.

(e) That the ladder which was being used by plaintiff at the time of the happening of the accident was not a proper or sufficient ladder for the use to which plaintiff put it. In other words, it is not a proper ladder to be used in a slanting position.

The question presented upon this appeal is whether or not the record discloses a question of fact which should have been submitted to a jury.

So far as material to relate the facts established by plaintiff upon the trial were as follows: The defendant having entered into a contract with the Johns Manville Company to cover the roofs of the sheds erected by it, one Wise, who was the foreman roofer of the Manville Company, a few days prior to the accident visited the sheds which defendant had in course of erection for the purpose of looking over the roofs of the shed preparatory to commencement of work therein. He ascended to the roof of one of the buildings by, as he described it, "a kind of rickety ladder spliced up with all kinds of pieces of boards and everything," "and you had to pull yourself up on the stomach to get up on that wing." He found that some of the roof boards projected above other boards, needed to be planed off and made level with the remaining boards, and spoke to defendant's foreman about the same. He did not go upon the second shed as there was no ladder there, but called attention of Erricsson, defendant's foreman, to the fact that the roof of that shed presented the same condition as the first shed. Erricsson promised to send carpenters to remedy the

condition. Wise asked Erricsson how he was going to get upon the other wing. Erricsson replied: "There are ladders over there [pointing towards the pier], go and use one." The witness returned, went into a building and found two brand new ladders lying against the side of the building inside the room, about twenty-two feet in length. The two ladders found and the short ladder were the only ladders on the grounds and he instructed his men then with him to use the ladders. He then placed one of the ladders against the building and climbed same to the roof. He did not recall a job during his sixteen years' employment by the Manville Company or when employed by others where he failed to find ladders on the job. No roofers furnished ladders — that had been his experience in the roofing business. Of his own knowledge he knew that the ladders belonged to the contractors. After he placed the ladder against the shed he observed Mr. Erricsson and his men, the carpenters, use the ladders.

The plaintiff had been employed by the Manville Company about five years and testified that upon every job on which he worked he found ladders when he went upon the job. He had worked on Friday and Saturday before the accident on the north side of the north shed and went upon the roof by the same ladder which caused the accident. On Monday he started up the ladder, and having reached the edge of the roof, placed one foot on the same, and while the other foot was on the rung of the ladder the ladder broke, he fell about twenty feet to the ground, was rendered unconscious and sustained injuries the subject of this action.

The ladder in use by plaintiff broke at a point about two rungs from the bottom where it had been spliced. The plaintiff was one of some fifteen or eighteen roofers of the Manville Company engaged on the job. The evidence discloses that the carpenters of defendant had used the ladder in question to reach the roof for the

purpose of making same even, and that the foreman of defendant observed such use of the ladder by them and by the roofers.

In addition to the evidence already referred to bearing upon the custom of general contractors furnishing ladders for roofers several witnesses testified that the custom or practice prevailing in the trade was that ladders were at all times when necessary provided by general contractors for the use of roofers and at no time within their experience, in some instances covering a period of twenty years, did they recall an occasion when ladders were furnished by the roofers.

The general contractor (defendant) when it made a contract with the Manville Company to cover the roofs of the sheds with asbestos covering appreciated the fact that the Manville Company would be required to send a force of its employees to perform the work, and in order to execute the same some means of reaching the roof was necessary. The plaintiff and his associate workmen were lawfully upon the premises at the time of the accident to plaintiff, to participate in the business being carried on by defendant, namely, the erection and completion of the sheds for the owner.

The evidence offered by plaintiff, narrated above, would fairly warrant an inference that Erricsson, the foreman carpenter of defendant, was authorized to and did direct the foreman of the Manville Company to procure the ladder in question to enable the roofers to ascend to and descend from the roof of the shed in course of completion by defendant; that having secured the ladder and placed the same in place, defendant's foreman and carpenters used the ladder indiscriminately with the roofers, including plaintiff, for some days before the breaking of the same, with the knowledge of Erricsson, who represented defendant, and, as expressly conceded by defendant, that the ladder was built by defendant under the direction of Erricsson, their foreman carpenter; " that the ladder

at the time of the accident was not a proper or sufficient ladder for the use to which plaintiff put it, in other words it is not a proper ladder to be used in a slanting position," which fact presumably was known to Erricsson during the time the same was used in such position, and, by reason of the circumstances, that the defendant failed to exercise reasonable care to keep the ladder in such condition that plaintiff would not be unnecessarily exposed to danger.

The question presented on the record was clearly one to be submitted to the jury, and the judgments of the Appellate Division and the Trial Term should be reversed and a new trial granted, with costs in all courts to abide the event.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.