WILLIAM CLAYTOR, Respondent, v. WILMOT AND CASSIDY, INC., et al., Appellants.— In a negligence action to recover damages for personal injuries, defendants, Wilmot and Cassidy, Inc. and Knickerbocker Ice Co. (hereinafter called "Wilmot" and "Knickerbocker"), appeal from an interlocutory judgment of the Supreme Court, Kings County, entered July 12, 1973, against them and in favor of plaintiff on the issues of liability, upon a jury verdict at a trial of those issues only. Interlocutory judgment reversed, on the facts, and new trial granted, with costs to abide the event. Plaintiff was engaged to install an intercom system in Wilmot's plant. The necessities of the job required that he install rings to hold cable for speakers on a wall beam 16 to 18 feet above the floor of the plant building. He asked an individual, whom he identified as Wilmot's shop foreman, for the use of a ladder and was offered what he described as a used wooden extension ladder which did not have safety feet. He testified that at this point he asked the foreman if this was the only available ladder, stating that he was "a little afraid of this one" and that he did not want to use it because it had no safety feet. The foreman's reply was: "That's the only ladder that we have. Use it or get your own. Forget it." Plaintiff used the ladder for several hours on the morning of the accident without mishap. He testified that during this time an ice truck belonging to Knickerbocker was backed into the plant and men were chopping ice on the truck and pushing the chips down a chute into a vat. There was testimony that when the men chopped the ice it "spatter[ed] over"

the sides of the truck and fell to the floor, creating puddles of water. Plaintiff testified that he saw the water on the floor near the Knickerbocker truck. Plaintiff also testified that prior to placing and ascending the ladder just before the accident he observed that the floor was clear and dry. He was on the ladder for about 10 to 15 minutes when it suddenly slipped out from beneath him and he was injured in the fall. When he looked up he found that he had landed in the place where the feet of the ladder had been before they slipped and that his clothes were wet from a single stream of water 5 to 7 inches wide which ran about 25 feet to this spot from the vicinity of the ice truck. Plaintiff sued to recover damages for his injuries upon the theory that Wilmot had supplied him with a ladder which was defective because it lacked safety shoes and that Wilmot was liable therefor under section 240 of the Labor Law (as it read at the time of the accident, on March 15, 1967) or in common-law negligence, and that Knickerbocker had negligently created the wet and dangerous condition which combined to cause the accident. The trial court properly granted Wilmot's motion, made at the close of plaintiff's case, to dismiss so much of the complaint as sought recovery under section 240 of the Labor Law because he had failed to prove Wilmot "employed or directed" him in the execution of the work. Mere permission to use the ladder, without more, is insufficient to constitute direction for the purposes of this section (*De Luca* v. *Fehlhaber Corp.*, 38 Misc 2d 184, 186; *Glass* v. *Gens-Jarboe, Inc.*, 280 App. Div. 378, affd. 306 N. Y. 786). This being so, the defense of contributory negligence was available to defeat plaintiff's common-law negligence claim (cf. *Koenig* v. *Patrick Constr. Corp.*, 298 N. Y. 313). Plaintiff contends that the interlocutory judgment against Wilmot can properly be predicated upon the rule that, where an employer, general contractor or owner furnishes a ladder or scaffold for the employees of a subcontractor to work on, he must furnish a safe appliance (citing *Cassin* v. *Stillman, Delehanty, Ferris Co.*, 232 N. Y. 325; *Duggan* v. *National Constructors & Engineers, Inc.*, 223 App. Div. 163; *Berthelson* v. *Gabler*, 111 App. Div. 142; *Dolnick* v. *Donner Lbr. Corp.*, 300 N. Y. 660; *Fuller* v. *Mulcahy & Gibson*, 164 App. Div. 829; *Huston* v. *Dobson*, 138 App. Div. 810). All these cited cases are distinguishable, because the ladders or scaffolds involved therein were defective and either broke or collapsed, causing injury. In the case at bar, the mere failure to equip the ladder with safety feet did not render it defective or unsafe per se. Plaintiff could have used the ladder safely either by obtaining an assistant to hold it while he was upon it (in this regard there was evidence that an employee of the intercom subcontractor worked with plaintiff on the day before the accident, but there was no evidence that plaintiff sought to obtain his services when he knew the only suitable ladder that Wilmot possessed lacked safety shoes) or by tying the foot of the ladder to a secure anchorage (see, e.g., 12 NYCRR 23-1.21 [b] [4]). On these facts the jury's verdict was against the weight of the evidence. Hopkins, Acting P. J., Christ and Benjamin, JJ., concur; Shapiro and Brennan, JJ., concur in the reversal, but otherwise dissent and vote to dismiss the complaint, with the following memorandum: We would go further than the majority and dismiss the complaint upon the ground that no negligence was shown. Plaintiff manifestly knew of the possible danger in using the ladder in question, which lacked safety shoes, without the utilization of one of the alternative methods mentioned in the majority memorandum of securing the ladder against a fall. He chose to use it without taking the alternative safety precautions and in doing so he assumed the risk of injury if the ladder were to fall because it lacked the safety shoes. We are further of the opinion that his conduct

in failing to take reasonable alternative safety measures prior to using the ladder, with knowledge of the danger, constituted contributory negligence as a matter of law (cf. *Gugliemini* v. *Conigliaro*, 35 A D 2d 524). With respect to the liability of Knickerbocker, the only possible theory upon which Knickerbocker could be held on these facts was if the jury found that Knickerbocker's employees created a wet and dangerous condition and that a reasonable man should have foreseen that the water might run across the floor and make the footings of plaintiff's ladder slippery, causing it to fall. Plaintiff had knowledge of the wet condition and, if the jury found that a reasonable man should have foreseen that the water might run and make the footings of the ladder slippery, then plaintiff should have foreseen this as well as Knickerbocker's employees and should have ceased work in the face of the danger. Accordingly, the interlocutory judgment should be reversed and the complaint dismissed as against both defendants, because plaintiff assumed the risk of using the ladder in the manner he did, without safety feet, and because he was guilty of contributory negligence as a matter of law.